IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

RADCLIFFE MEEKS,

                              Plaintiff,              Civil Action No.
          -v.-                                        9:08-CV-1037 (GLS/DEP)

RAJIESHWAR KARTEN, M.D. and
SIDICKY, M.D.,

                              Defendants.

APPEARANCES:

FOR PLAINTIFF:

RADCLIFFE MEEKS, *Pro Se*
06-A-2671
Clinton Correctional Facility
P.O. Box 2001
Dannemora, NY  12929

FOR DEFENDANTS:

HON. ANDREW M. CUOMO              ADRIENNE J. KERWIN, ESQ.
Attorney General of              Assistant Attorney General
the State of New York
The Capitol
Albany, NY 12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

Plaintiff Radcliffe Meeks, a New York State prison inmate who is proceeding *pro se* and *in forma pauperis*, has commenced this action pursuant to 42 U.S.C. § 1983 against two physicians employed at the Central New York Psychiatric Center ("CNYPC"), alleging deprivation of his civil rights.  In his complaint, as amended, Meeks asserts that while housed at the CNYPC he was medicated and blood was drawn against his will and through the use of excessive force, and in violation of his sincerely-held religious beliefs, and further that defendants were deliberately indifferent to his medical needs, including the adverse affects of being medicated and injuries to his fingers suffered while protesting defendants' actions.  As relief, plaintiff's complaint seeks awards of compensatory and punitive damages.

Currently pending before the court is a motion on behalf of the defendants seeking partial dismissal of plaintiff's complaint.  In their motion, defendants assert that plaintiff's complaint does not state plausible claims for deliberate medical indifference or the use of excessive force and that plaintiff's claims against them in their official capacities must be dismissed under the Eleventh Amendment.  For the reasons set forth below, I recommend that defendants' motion be granted.

2

I.    BACKGROUND[1]

Plaintiff is a New York State prison inmate entrusted to the care and custody of the New York State Department of Correctional Services ("DOCS").  While plaintiff is currently incarcerated in the Clinton Correctional Facility ("Clinton"), located in Dannemora, New York, the relevant events forming the basis for his claims occurred while he was temporarily housed at the CNYPC.  *See generally* Plaintiff's Second Amended Complaint (Dkt. No. 7).

The claims set forth in plaintiff's complaint appear to be predicated upon two separate incidents.  The first occurred in October of 2007 when Meeks was medicated and blood was drawn, apparently by employees at the CNYPC at the direction of defendant Dr. Rajieshwar Kartan, despite his protests that such actions would be violate his religious beliefs as a Rastafarian Nazanite.  Plaintiff's Second Amended Complaint (Dkt. No. 7) ¶¶ 8-12.  After being medicated against his will plaintiff reported feeling ill, being unable to stand, weakness in his joints, development of chronic headaches,

_____

[1]    In light of the procedural posture of this case, the following recitation is drawn principally from plaintiff's complaint, the contents of which have been accepted as true for purposes of the pending motion, *see Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200 (2007) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007)); *see also Cooper v. Pate*, 378 U.S. 546, 546, 84 S.Ct. 1733, 1734 (1964).

and an inability to keep his eyes open and focused.  *Id.* ¶¶ 13-14.  Despite

those reports, plaintiff was not provided with medical attention.  *Id.*

On November 22, 2007, plaintiff was again medicated at the direction of

defendant Dr. Sidicky, over Meeks' objection and despite his protest that his

religious beliefs prohibited such medication.  Plaintiff's Second Amended

Complaint (Dkt. No. 7) ¶ 15.  After being medicated and locked in a room,

plaintiff banged on the door in protest, resulting in his ring finger and pinky

finger of the right hand "slip[ing] out."  *Id.* ¶ 16.  Despite those injuries,

plaintiff did not receive medical attention.  *Id.*

II.    PROCEDURAL HISTORY

Plaintiff commenced this action on September 30, 2008 and, at the

direction of the court, submitted a second amended complaint, which was

approved by the court for filing on November 28, 2008.  Dkt. Nos. 1, 4, 6 and

7.  In his second amended complaint plaintiff names Dr. Rajieshwar Kartan

and Dr. Sidicky as defendants, purporting to sue them in both their individual

and official capacities, and sets forth three causes of action, alleging 1)

deliberate indifference to his serious medical needs; 2) the unlawful use of

excessive force; and 3) violation of his free religious exercise rights under the

First Amendment.  *Id.*

4

On March 9, 2009, in lieu of answering, defendants moved for dismissal of portions of plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Dkt. No. 13.  In their motion, defendants argue that 1) since plaintiff does not allege that they were directly involved in the drawing of blood, medicating of the plaintiff, or the use of force, they cannot be held personally liable; 2) in any event, the force applied to plaintiff was *de minimis,* and therefore does not give rise to a claim under the Eighth Amendment; 3) plaintiff failed to allege the existence of a serious medical condition, and therefore cannot pursue a claim of deliberate indifference under the Eighth Amendment; and 4) defendants are shielded from suit in their official capacities by the Eleventh Amendment and the doctrine of sovereign immunity.  *Id.*  Plaintiff has since submitted an affidavit, filed on March 30, 2009, in opposition to defendants' pending motion.  Dkt. No. 15.

Defendants' motion, which is now ripe for determination, has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).  *See* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

A.   Dismissal Motion Standard

A motion to dismiss a complaint, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the facial sufficiency of that pleading, utilizing as a backdrop a pleading standard which, though unexacting in its requirements, "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation" in order to withstand scrutiny.  *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)).  The relevant pleading requirements are set forth in Rule 8(a)(2) of the Federal Rules of Civil Procedure, which requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  *Id.*  While modest in its mandates, that rule commands that a complaint contain more than mere legal conclusions; "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Ashcroft,* 129 S.Ct. at 1950.

To withstand a motion to dismiss, a complaint must plead sufficient facts which, when accepted as true, state a claim which is plausible on its

face.  *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) (citing *Twombly*, 550 U.S. at 570, 127 S.Ct. at 1974).  As the Second Circuit has observed, "[w]hile *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [plaintiffs'] claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. at 1974).

In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true, and draw all inferences in favor of the non-moving party.  *Cooper v. Pate*, 378 U.S. 546, 546, 84 S.Ct. 1723, 1734 (1964); *Miller v. Wolpoff & Abramson, LLP*, 321 F.3d 292, 300 (2d Cir.), *cert. denied*, 540 U.S. 823, 124 S.Ct. 153 (2003); *Burke v. Gregory*, 356 F. Supp.2d 179, 182 (N.D.N.Y. 2005) (Kahn, J.).  The burden undertaken by a party requesting dismissal of a complaint under Rule 12(b)(6) is substantial; the question presented by such a motion is not whether the plaintiff is likely ultimately to prevail, "'but whether the claimant is entitled to offer evidence to support the claims.'" *Log On America, Inc. v. Promethean Asset Mgmt. L.L.C.*, 223 F. Supp.2d 435, 441 (S.D.N.Y. 2001) (quoting *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995)) (other quotations omitted).

When assessing the sufficiency of a complaint against this backdrop, particular deference should be afforded to a *pro se* litigant whose complaint merits a generous construction by the court when determining whether it states a cognizable cause of action.  *Erickson*, 551 U.S. at 94, 127 S.Ct. at 2200 (2007) ("'[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers'") (quoting *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292 (1976) (internal quotations omitted)); *Davis v. Goord*, 320 F.3d 346, 350 (2d Cir. 2003) (citation omitted); *Donhauser v. Goord*, 314 F. Supp.2d 119, 121 (N.D.N.Y. 2004) (Hurd, J.).  In the event of a perceived deficiency in a *pro se* plaintiff's complaint, a court should not dismiss without granting leave to amend at least once if there is any indication that a valid claim might be stated.  *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir.1991); *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires").

B.    <u>Personal Involvement</u>

In their motion, defendants assert that they cannot be held liable for the constitutional violations alleged since they did not actually touch and apply force, draw blood from, or administer medication to the plaintiff.  Defendants

assert that because civil liability under section 1983 cannot be predicated upon a theory of *respondeat superior*, they have no personal involvement in the alleged constitutional violation.

Undeniably, personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under section 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir. 1991) and *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087, 98 S.Ct. 1282 (1978)).  In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant.  Id.

In this instance it is true plaintiff's complaint does not allege that either of the defendants personally touched the plaintiff, applied force, drew blood, or administered medication against plaintiff's will.  This fact, however, does not shield defendants from liability.  Plaintiff's complaint alleges that those acts were performed at the direction of the defendants, a circumstance establishing their involvement in the constitutional deprivation.  When a constitutional deprivation occurs based upon conduct of a subordinate acting in the direction of a supervisor, liability on the part of the supervisor can lie.

*Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999) ("[S]upervisor may be found personally involved in a deprivation . . . [if he or she] . . . directly participated in the infraction."); *see also Collins v. Goord*, 581 F. Supp.2d 563, 575 (S.D.N.Y. 2008) (supervisor's motion for summary judgment denied where question of fact existed as to whether law library supervisor acted as a decision maker).  I therefore recommend against dismissal of plaintiff's claims against the defendants on this basis.

    C.   <u>Excessive Force</u>

Defendants next argue that the force applied to the plaintiff during the course of drawing his blood and medicating him was *de minimis,* and thus does not rise to a level sufficient to support a cognizable claim of cruel and unusual punishment.

Plaintiff's excessive force claim arises under the Eighth Amendment.  A plaintiff's constitutional right under that constitutional provision against cruel and unusual punishment is violated by an "unnecessary and wanton infliction of pain."  *Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1076, 1084 (1986) (citations and quotations omitted); *Griffen v. Crippen,* 193 F.3d 89, 91 (2d Cir. 1999).  The lynchpin inquiry in deciding claims of excessive force against prison officials is "whether force was applied in a good-faith effort to maintain

or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hudson v. McMillian,* 503 U.S. 1, 7, 112 S.Ct. 995, 999 (1992) (applying *Whitley* to all excessive force claims); *Whitley*, 475 U.S. at 320-21, 106 S.Ct. at 1085 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.) (Friendly, J.), *cert. denied sub nom.*, *John v. Johnson*, 414 U.S. 1033, 94 S.Ct. 462 (1973)).[2]  Analysis of claims of cruel and unusual punishment requires both objective and subjective examinations.  *Hudson,* 503 U.S. at 8, 112 S.Ct. at 999; *Wilson v. Seiter*, 501 U.S. 294, 298-99, 111 S.Ct. 2321, 2324 (1991); *Griffen*, 193 F.3d at 91.

The objective prong of the inquiry is contextual, and relies upon "contemporary standards of decency." *Hudson*, 503 U.S. at 8 (quoting *Estelle*, 429 U.S. at 103, 97 S.Ct. at 290).  When addressing this component

---

[2]    Although the record does not reveal the circumstances surrounding the plaintiff's commitment to CNYPC, it appears that plaintiff was still within the custody of the DOCS at the time.  Information maintained on the DOCS inmate lookup web site indicates that, during the times relevant to his complaint, plaintiff was serving a prison terms of twenty-five years to life, with a parole eligibility date of March 22, 2030. http://nysdocslookup.docs.state.ny.us.  Even though plaintiff was not physically located at a DOCS facility at the relevant time, because he was a prison inmate within the DOCS care and control the analysis of his excessive use of force claim is properly conducted within the framework of the Eighth Amendment, *see*, *e.g.*, *Cruz v. Ward*, 558 F.2d 658 (2d Cir. 1977) (applying Eighth Amendment to claim of inmates involving the decision to transfer from psychiatric facility back to prison; *Candelaria v. Erickson*, No.01Civ.8594, 2005 WL 1529566 (S.D.N.Y. June 28, 2005) (applying Eighth Amendment to inmate claim of medical indifference against hospital), and not the Fourteenth, which would apply in circumstances involving an involuntary civil commitment.  *Youngberg v. Romeo*, 457 U.S. 307, 312, 102 S. Ct. 2452, 2456 (1982).

of an excessive force claim under the Eighth Amendment calculus, the court

can consider the extent of the injury suffered by the inmate plaintiff.  While

the absence of significant injury is certainly relevant, it is not dispositive, as

the defendants seemingly suggest.  *Hudson*, 503 U.S. at 7, 112 S.Ct. at 999.

The extent of an inmate's injury is but one of the factors to be considered in

determining a prison official's use of force was "unnecessary and wanton";

courts should also consider the need for force, whether the force was

proportionate to the need, the threat reasonably perceived by the officials,

and what, if anything, the officials did to limit their use of force.  *Whitley*, 475

U.S. at 321, 106 S.Ct. at 1085 (citing *Johnson*, 481 F.2d at 1033).  Under

*Hudson*, even if the injuries suffered by a plaintiff "'were not permanent or

severe'", a plaintiff may still recover if "'the force used was unreasonable and

excessive.'"  *Corselli v. Coughlin*, 842 F.2d 23, 26 (2d Cir. 1988) (quoting

*Robinson v. Via*, 821 F.2d 913, 924 (2d Cir.1987)).

Turning to the subjective element, as defendants argue, to prevail,

plaintiff must establish that defendant acted with a sufficiently culpable state

of mind.  *Davidson v. Flynn*, 32 F.3d 27, 30 (2d Cir. 1994) (citing *Hudson*,

503 U.S. at 8, 112 S.Ct. at 999).  That determination is informed by four

factors, including 1) the need for application of force; 2) the relationship

between that need and the amount of force used; 3) the threat reasonably perceived by the responsible officials; and 4) any efforts made to temper the severity of a forceful response. *Whitley*, 475 U.S. at 321, 106 S.Ct. at 1085. The principal focus of this inquiry "turns on 'whether force was applied in a good faith effort to maintain discipline or maliciously and sadistically for the very purpose of causing harm.'" *Whitley*, 475 U.S. at 320-21, 106 S.Ct. at 1085 (quoting *Johnson,* 481 F.2d at 1033).   When considering the subjective element of the governing Eighth Amendment test, a court must consider that the absence of serious injury, though relevant, does not necessarily negate a finding of wantonness since, as the Supreme Court has noted,

> [w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. . . . This is true whether or not significant injury is evident.  Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.

*Hudson,* 503 U.S. at 9, 112 S.Ct. at 1000 (citations omitted); *Velasquez v. O'Keefe*, 899 F. Supp. 972, 973 (N.D.N.Y. 1995) (McAvoy, C.J.) (quoting *Hudson*, 503 U.S. at 9, 112 S.Ct. at 1000); *see Romaine v. Rewson,* 140 F. Supp.2d 204, 211 (N.D.N.Y. 2001) (Kahn, J.).  Even a *de minimis* use of physical force can constitute cruel and unusual punishment if it is "repugnant

13

to the conscience of mankind."[3]  *Hudson*, 503 U.S. at 9-10, 112 S.Ct. 1000 (citations omitted).

While the degree of force utilized to draw blood from the plaintiff and to medicate him against his will is not the subject of a great deal of elaboration in his complaint, it is clear that plaintiff does not allege more than a *de minimis* restraint, without any resulting physical injury.  Moreover, plaintiff's complaint makes it clear that the use of force was exercised solely for the purpose of drawing blood and medicating him, over his religious objections, and was not applied maliciously and sadistically in order to cause harm or otherwise in a violation of contemporary standards of decency.  Under these circumstances, even accepting as true the allegations set forth in plaintiff's complaint, they do not rise to a level sufficient to support a viable Eighth Amendment excessive force claim.  *Hasenmeier-McCarthy v. Rose,* 986 F. Supp. 464, 470-71 (S.D. Ohio 1998).  I therefore recommend dismissal of that portion of plaintiff's complaint which asserts an Eighth Amendment

---

[3]     It should be noted, however, that in practice a truly *de minimis* use of force will rarely suffice to state a constitutional claim.  *Hudson,* 503 U.S. at 9-10, 112 S.Ct. at 1000 ("[Not] every malevolent touch by a prison guard gives rise to a federal cause of action"); *Griffen*, 193 F.3d at 91 (citing *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993)); *Johnson*, 481 F.2d at 1033 ("Not every push or shove, even if it later may seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights").

excessive force claim against the defendant, though with leave to replead should plaintiff claim the use of force beyond mere reasonable restraint for the purpose of drawing blood and medicating the plaintiff.

> D.   Deliberate Medical Indifference

In their motion, defendants also attack plaintiff's second cause of action, which alleges deliberate indifference to plaintiff's serious medical needs, arguing that plaintiff's complaint fails to allege the existence of such a need.

Claims that prison officials have intentionally disregarded an inmate's medical needs are also encompassed within the Eighth Amendment's prohibition of cruel and unusual punishment. *Estelle*, 429 U.S. at 104, 97 S.Ct. at 291.  In order to state a medical indifference claim under the Eighth Amendment, a plaintiff must first allege a deprivation involving a medical need which is, in objective terms, "'sufficiently serious'".  *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994), *cert. denied sub nom.*, *Foote v. Hathaway*, 513 U.S. 1154, 115 S.Ct. 1108 (1995) (quoting *Wilson*, 501 U.S. at 298, 111 S.Ct. at 2324).  A medical need is serious for constitutional purposes if it presents "'a condition of urgency' that may result in 'degeneration' or 'extreme pain'." *Chance v. Armstrong*, 143 F.3d 698, 702

15

(2d Cir. 1998) (citations omitted).  A serious medical need can also exist

where "'failure to treat a prisoner's condition could result in further significant

injury or the unnecessary and wanton infliction of pain'"; since medical

conditions vary in severity, a decision to leave a condition untreated may or

may not be unconstitutional, depending on the facts. *Harrison v. Barkley*,

219 F.3d 132, 136-37 (2d Cir. 2000) (quoting, *inter alia*, *Chance*, 143 F.3d at

702).  Relevant factors informing this determination include whether the

plaintiff suffers from an injury that a "'reasonable doctor or patient would find

important and worthy of comment or treatment'", a condition that

"'significantly affects'" a prisoner's daily activities, or "'the existence of chronic

and substantial pain.'" *Chance*, 143 F.3d at 701 (citation omitted); *Lafave v.

Clinton County*, No. CIV. 9:00CV774, 2002 WL 31309244, at *3 (N.D.N.Y.

Apr. 3, 2002) (Sharpe, M.J.) (citation omitted).[4]

The injuries which, plaintiff asserts, required medical attention that was

denied to him by prison officials include unspecified injuries to two fingers, as

well as the affects of medication including an inability to stand, weak joints,

chronic headaches, and blurred eyes.  Amended Complaint (Dkt. No. 7) ¶ 13;

*see also* Meeks Aff. (Dkt. No. 15) ¶ 4.  Plaintiff's allegations fail to disclose

---

[4]        Copies of all unreported decisions cited in this document have been
appended for the convenience of the *pro se* plaintiff.

the existence of a condition of urgency which could result in regeneration or extreme pain.  Under the circumstances, I recommend that plaintiff's deliberate medical indifference claim be dismissed, with leave to replead. *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009) ("'[A] *pro se* complaint is to be read liberally,' and 'should not [be] dismissed without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'") (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (per curiam)).

    E.    <u>Eleventh Amendment/Sovereign Immunity</u>

Lastly, in support of their motion defendants assert that plaintiff's claims against them in their official capacities are barred by the immunity provided under the Eleventh Amendment.

The Eleventh Amendment protects a state against suits brought in federal court by citizens of that state, regardless of the nature of the relief sought.  *Alabama v. Pugh*, 438 U.S. 781, 782, 98 S.Ct. 3057, 3057-58 (1978).  This absolute immunity which states enjoy under the Eleventh Amendment extends both to state agencies, and in favor of state officials sued for damages in their official capacities when the essence of the claim

involved seeks recovery from the state as the real party in interest.[5]  *Richards v. State of New York Appellate Division, Second Dep't*, 597 F. Supp. 689, 691 (E.D.N.Y. 1984), *aff'd* 767 F.2d 998 (2d Cir. 1985) (citing *Pugh* and *Cory v. White*, 457 U.S. 85, 89-91, 102 S.Ct. 2325, 2328-29 (1982)).  To the extent that a state official is sued for damages in his or her official capacity, the official is entitled to invoke the Eleventh Amendment immunity belonging to the state.[6]  *Kentucky v. Graham*, 473 U.S. 159, 166-67, 105 S.Ct. 3099, 3105 (1985); *Hafer v. Melo*, 502 U.S. 21, 30-31, 112 S.Ct. 358, 361 (1991) .

Since plaintiff's damage claims against the named defendants in their official capacities are in reality claims against the State of New York, thus exemplifying those against which the Eleventh Amendment protects, they are subject to dismissal.  *Daisernia v. State of New York*, 582 F. Supp. 792, 798-99 (N.D.N.Y. 1984) (McCurn, J.).  I therefore recommend this portion of defendants' motion be granted, and that plaintiff's damage claim against the

---

[5]     In a broader sense, this portion of defendants' motion implicates the sovereign immunity enjoyed by the State.  As the Supreme Court has reaffirmed relatively recently, the sovereign immunity enjoyed by the states is deeply rooted, having been recognized in this country even prior to ratification of the Constitution, and is neither dependent upon nor defined by the Eleventh Amendment.  *Northern Ins. Co. of New York v. Chatham County*, 547 U.S. 189,193, 126 S.Ct. 1689, 1693 (2006).

[6]     By contrast, the Eleventh Amendment does not establish a barrier against suits seeking to impose individual or personal liability on state officials under section 1983.  *See Hafer*, 502 U.S. at 30-31, 112 S.Ct. at 364-65.

defendants in their capacity as state officials be dismissed.

IV.   <u>SUMMARY AND RECOMMENDATION</u>

In their motion, while not challenging the sufficiency of plaintiff's free exercise claim under the First Amendment, defendants assert that Meeks' deliberate indifference and excessive force claims are not plausibly stated in his complaint, as amended.  Having carefully reviewed plaintiff's complaint I am in agreement with defendants' position, and therefore recommend dismissal of those claims, though with leave to replead.[7]  *Shomo v. City of New York*, 579 F.3d at 183.  I further find that defendants are entitled to dismissal of plaintiff's damage claims against them in their official capacities based upon the immunity afforded by the Eleventh Amendment.  Accordingly, it is hereby respectfully

RECOMMENDED that defendants' dismissal motion (Dkt. No. 13) be GRANTED and that plaintiff's claims against the defendants' in their official capacities be DISMISSED, with prejudice, and that his excessive force and deliberate medical indifference causes of action DISMISSED, with leave to

---

[7]     Although nowhere mentioned in this second amended complaint, plaintiff's motion response intimates the possibility of the First Amendment claim of retaliation.  *See* Meeks Aff. (Dkt. No. 15) ¶ 5 ("The Defendant's [sic] Denial of Medical Attention to Plaintiff was a form of punishment to Plaintiff by the Defendants, because He Had threatened them with Civil Action").  If he chooses to amend his complaint yet again, the plaintiff may consider adding a claim of unlawful retaliation.

replead.  Dkt. No. 13.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this Report and Recommendation upon the parties in accordance with this court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:       January 4, 2010
             Syracuse, NY



Not Reported in F.Supp.2d, 2005 WL 1529566 (S.D.N.Y.)
(Cite as: 2005 WL 1529566 (S.D.N.Y.))

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Juan CANDELARIA, Plaintiff,
v.
ERICKSON, individually and in his capacity as a Registered
Nurse employed by the New York State Department of
Correctional Services ("DOCS"); Gita Ramaswamy, M.D.,
individually and in her capacity as Director of the St. Agnes
Hospital and St. Agnes Hospital, individually and in its
capacity as a private entity, Defendants.
**No. 01Civ.8594(LTS)(RLE).**

June 28, 2005.

Juan Candelaria, No. 89-T-5069, Wende Correctional Facility,
Alden, New York, Plaintiff pro se.

Callan, Koster, Brady & Brennan, LLP, By: Michael P.
Kandler, New York, New York, for Defendant Gita
Ramaswamy, M.D.

Wilson, Elser, Moskowitz, Edelman & Dicker LLP, By: Laura
B. Jordan, White Plains, New York, for Defendant St. Agnes
Hospital.

*OPINION AND ORDER*

SWAIN, J.

**\*1** This matter, which was originally filed in the Western
District of New York and then transferred to the Southern
District of New York, comes before the Court on the following
motions: Defendant St. Agnes Hospital's ("St.Agnes") motion
to dismiss the amended complaint; Plaintiff *pro se* Juan
Candelaria's ("Plaintiff" or "Candelaria") motion for a default
judgment against Defendant Gita Ramaswamy, M.D.
("Ramaswamy") and for an order striking Ramaswamy's
untimely answer; Defendant Ramaswamy's motion for an order
permitting late service and filing of Ramaswamy's answer, and
for summary judgment pursuant to Fed.R.Civ.P. 56 on
Plaintiff's claims as against Ramaswamy; Plaintiff Candelaria's
motion for sanctions pursuant to Fed.R.Civ.P. 11 against
Ramaswamy; Plaintiff Candelaria's cross-motion for summary
judgment pursuant to Fed.R.Civ.P. 56 as to his claims against
Defendants St. Agnes and Ramaswamy; FN1 and Plaintiff
Candelaria's motion for a default judgment against Defendant
Philip T. Erickson ("Erickson").FN2

> **FN1.** While Candelaria's cross-motion for summary
> judgment has been pending, Candelaria filed two
> additional motions making the same requests for
> relief and presenting essentially the same subject
> matter. The instant decision addresses those motions,
> which are both duplicative and untimely, as well.

> **FN2.** Plaintiff, in the Second Amended Complaint,
> refers to Defendant Erickson as "Erickson" without
> specifying a first name. The Court issued an order,
> dated March 5, 2002, requesting that the New York
> State Attorney General's Office attempt to ascertain
> the most recent address for Defendant Erickson. (*See*
> Affirmation in Support of Pl.'s Motion for Default
> Judgment Against Defendant Erickson, Exh. A-1.)
> The New York State Attorney General's Office
> responded with a letter, dated March 26, 2002,
> identifying Philip T. Erickson as fitting the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 1529566 (S.D.N.Y.)
(Cite as: 2005 WL 1529566 (S.D.N.Y.))

description of Defendant Erickson in Plaintiff's complaint. (*Id.,* Exh. A-2.) Plaintiff has since made efforts to serve process upon, and now moves for a motion for a default judgment against, Philip T. Erickson. (*Id.* ¶¶ 5-12.)

In his Second Amended Complaint, Plaintiff asserts a claim under 42 U.S.C. § 1983, alleging deliberate indifference to Plaintiff's serious medical needs in violation of Plaintiff's Eighth and Fourteenth Amendment rights, against Erickson arising from Erickson's alleged treatment of Plaintiff in his capacity as a Registered Nurse employed by the New York State Department of Correctional Services ("DOCS"). Plaintiff also asserts claims under 42 U.S.C. § 1983, alleging gross negligence and deliberate indifference to Plaintiff's serious medical needs in violation of Plaintiff's rights under the Eighth and Fourteenth Amendments, against Defendants St. Agnes Hospital and Ramaswamy arising from medical treatment Plaintiff allegedly received while a patient at St. Agnes Hospital. In addition, since Plaintiff refers in his Second Amended Complaint to accepted standards of medical practice, the Court will construe the Second Amended Complaint to also assert state law medical malpractice claims against Erickson, St. Agnes and Ramaswamy.

For the following reasons, Defendant St. Agnes' motion to dismiss the Second Amended Complaint is denied, Plaintiff's motion for a default judgment against Ramaswamy and for an order striking Ramaswamy's untimely answer is denied, Ramaswamy's motion for an order permitting the late service and filing of Ramaswamy's answer is granted, Ramaswamy's motion for summary judgment pursuant to Fed.R.Civ.P. 56 is granted, Candelaria's cross-motion for summary judgment pursuant to Fed.R.Civ.P. 56 is denied, Candelaria's motion for Rule 11 sanctions as to Ramaswamy is denied, and Candelaria's motion for a default judgment against Defendant Erickson is denied without prejudice to renewal.

*BACKGROUND* [FN3]

FN3. The facts are taken from Plaintiff's Second Amended Complaint as well as the affidavits and other submissions proffered by the parties to this action. The allegations in the Second Amended Complaint are taken as true for the purposes of deciding Defendant St. Agnes' motion to dismiss. The allegations in the Second Amended Complaint, as well as the material allegations in Plaintiff's papers relating to his cross-motion for summary judgment, are construed liberally and in the light most favorable to Plaintiff in evaluating the instant motions insofar as they are directed at the sufficiency of the pleadings.

The claims in this action relate to the treatment of Plaintiff's chronic kidney ailments, which have developed into End Stage Renal Disease ("ESRD"). Plaintiff alleges deliberate indifference to his serious medical needs and malpractice both by Defendant Erickson while Plaintiff was imprisoned, and by St. Agnes and Ramaswamy during periods in which Plaintiff was hospitalized at St. Agnes. Plaintiff's allegations regarding the treatment he received during his hospitalizations at St. Agnes will be treated first.

*Plaintiff's Allegations Against St. Agnes and Ramaswamy*

*Second Amended Complaint*

**\*2** In his Second Amended Complaint, Plaintiff Candelaria, an inmate in the custody of DOCS, alleges that he was referred to St. Agnes by DOCS and admitted into the hospital on August 25, 1997. (Second Amended Complaint ("Compl.") ¶¶ 44, 45.) Plaintiff alleges that during his time at St. Agnes, which apparently included a stay from August 25, 1997, through September 17, 1997, and another stay from October 29, 1997,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 1529566 (S.D.N.Y.)
(Cite as: 2005 WL 1529566 (S.D.N.Y.))

through December 2, 1997, *see* Pl's Stmt. Pursuant to Local Rule 56.1(a) ("Pl's Rule 56.1 Stmt.") ¶¶ 5-17; Compl. ¶ 45, Plaintiff was treated by a team of physicians and nurses under the instruction of Ramaswamy (Plaintiff alleges that Ramaswamy was the Medical Director of St. Agnes during the relevant period) who diagnosed him first with Chronic Renal Failure ("CRF") and later as suffering from ESRD. (Compl. ¶¶ 43-44; Affidavit of Juan Candelaria in Supp. of Cross-Notice of Motion for SJ, dated June 8, 2002, ("Candelaria Aff.") ¶ 4.) According to Plaintiff, the cause of these conditions remained unknown to him because Ramaswamy and St. Agnes deliberately failed to conduct the appropriate physical testing and evaluation. (Compl.¶ 45.)

Plaintiff also alleges that it was not until he heard the expert testimony of Dr. David S. Goldfarb and Dr. Steven Fishbane during a 2000 jury trial of Plaintiff's earlier deliberate indifference claims arising from DOCS' treatment of Plaintiff's kidney ailments that he realized that his CRF and ESRD might have been caused by a disease called Focal Segmental Glomerular Sclerosis" ("FSGS"), and that such disease could have been diagnosed if the treating physicians at St. Agnes had performed a kidney biopsy either upon diagnosing Plaintiff with CRF, or later upon diagnosing Plaintiff with ESRD. (*Id.* ¶¶ 46-47.) Plaintiff alleges that FSGS is treatable through a number of methods other than dialysis, and that, had the FSGS been diagnosed in a timely fashion, he might not have become wholly dependent on dialysis for his continued survival. (*Id.* ¶¶ 48-50.)

Plaintiff alleges that, after his discharge from St. Agnes on December 2, 1997, he was transferred back to prison where he was scheduled to receive hemodialysis treatment three times a week (each treatment taking 3 1/2 hours). (Compl.¶ 50.) According to Plaintiff, unless he can obtain a kidney transplant, he will be dependent on such treatment for his continued survival for the rest of his life. (*Id.*)

*Summary Judgment Papers*

In his summary judgment papers, Plaintiff details his hospitalizations at St. Agnes, contending that, during his first stay at St. Agnes, Plaintiff's treating physicians diagnosed Plaintiff with CRF, represented to Plaintiff that this condition was caused by high blood pressure and indicated that a special renal diet would ameliorate the condition. (Candelaria Aff. ¶ 4). Although not specifically stated in the Second Amended Complaint or Plaintiff's affidavit, Plaintiff contends in his Rule 56.1 Statement that he was discharged from St. Agnes and returned to Green Haven Correctional Facility ("Green Haven"), his place of incarceration, on September 17, 1997, with a prescription for a special renal diet restricting protein intake, but that he did not receive such a diet while at Green Haven. (Pl's Rule 56.1 Stmt. ¶ 6.)

**\*3** Plaintiff was again admitted to St. Agnes on October 29, 1997, and was diagnosed with ESRD. Plaintiff's treating physicians continued to represent to Plaintiff that his condition was the result of high blood pressure and an inability to obtain the prescribed renal diet. (Candelaria Aff. ¶ 4.) On or about November 6, 1997, Plaintiff began receiving hemodialysis treatment. (*Id.*) At no point during Plaintiff's hospitalizations at St. Agnes did Plaintiff's treating physicians perform a kidney biopsy on Plaintiff. (Pl's Rule 56.1 Stmt. ¶¶ 8-17.) Plaintiff contends that, unless he can obtain a kidney transplant, he will be dependent on such treatment for his continued survival for the rest of his life. (Candelaria Aff. ¶ 11.)

Plaintiff contends that Dr. Gita Ramaswamy was the Medical Director of St. Agnes Hospital during both of the periods when Plaintiff was hospitalized at St. Agnes, and that Ramaswamy was directly responsible for many of the treatment decisions that were made in connection with Plaintiff's medical care. (Candelaria Aff. ¶ 13; Pl's Rule 56.1 Stmt., Exs. D-4-D-9.) Defendant Ramaswamy, however, contends that she has never been the Medical Director at St. Agnes and that, at all times

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 1529566 (S.D.N.Y.)
(Cite as: 2005 WL 1529566 (S.D.N.Y.))

relevant to Plaintiff's Second Amended Complaint, she was the Director of the Pathology Laboratory at St. Agnes. (Affidavit of Gita Ramaswamy, dated April 23, 2002, ("Ramaswamy Aff.") ¶ 6.) According to Ramaswamy, she neither made nor was responsible for any treatment decisions relating to Plaintiff's medical care. Ramaswamy further contends that, in her capacity as Director of St. Agnes' Pathology Laboratory, she never made any treatment decisions concerning patients at St. Agnes or trained any medical personnel in the diagnosis and management of medical conditions. (*Id.* ¶¶ 7, 9.)

On September 8, 1998, Candelaria filed a civil rights lawsuit in the Southern District of New York FN4 against several DOCS employees at Green Haven alleging, *inter alia,* that the employees' failure to provide Candelaria with a special renal diet amounted to deliberate indifference to his medical needs in violation of his rights under the Eighth Amendment. (Candelaria Aff. ¶¶ 5-6.) Plaintiff contends that certain expert testimony provided by Dr. David S. Goldfarb and Dr. Steven Fishbane during a jury trial in that matter alerted Plaintiff to the possibility that his CRF/ESRD might not have been caused by his inability to receive a special renal diet while in the custody of DOCS, but rather might have been the result of FSGS, which is often treatable and can be diagnosed by means of a kidney biopsy. (Candelaria Aff. ¶¶ 10-11 .) Plaintiff asserts that Defendants' failure to perform the kidney biopsy was deliberate. (Pl's Rule 56.1 Stmt. ¶ 24.) Plaintiff also contends that, if a kidney biopsy had been performed while Plaintiff was a patient at St. Agnes, Plaintiff's underlying kidney disease might have been diagnosed and Plaintiff might never have become dependent on dialysis for survival. (Candelaria Aff. ¶ 11; Pl's Rule 56.1 Stmt. ¶¶ 25-32.)

FN4. *Candelaria v. Cunningham, et al.,* 98 Civ. 6273(LAP)(AJP) ( "Candelaria I").

*Plaintiff's Allegations Against Erickson*

**\*4** Plaintiff Candelaria alleges that between January 15, 1992, and December 2, 1997, Registered Nurse Philip Erickson was responsible for numerous treatment decisions made with respect to Plaintiff's medical care. (Compl.¶ 4.) Plaintiff further alleges that, despite the fact that Erickson was fully aware that Plaintiff suffered from a variety of medical conditions which, individually and collectively, evidenced a need for treatment of Plaintiff's kidneys (*i.e.,* a neurogenic bladder condition, Plaintiff's need for self-catheterization, the presence of high levels of blood and protein in Plaintiff's urine, the existence of a high serum creatine level of 1.4, and Plaintiff's high blood pressure), Erickson ignored or otherwise failed to treat these signs of kidney problems, failing to refer Plaintiff to a nephrologist or a urologist or place Plaintiff on a special protein-restricted diet. Plaintiff alleges that Erickson's conduct resulted in Plaintiff developing CRF and ESRD, and that Erickson's conduct was a factor in causing Plaintiff's current dependence on dialysis for his continued survival. (*Id.* ¶¶ 4, 15-43.)

*DISCUSSION*

*St. Agnes' Motion to Dismiss*

Defendant St. Agnes has moved to dismiss the Second Amended Complaint with respect to all of Plaintiff's claims against St. Agnes on the following three grounds: lack of subject matter jurisdiction, improper service of process, and expiration of the applicable statutes of limitations. The Court will consider each of St. Agnes' asserted grounds for dismissal in turn.

*Subject Matter Jurisdiction*

Defendant St. Agnes contends that the Court lacks subject matter jurisdiction of Plaintiff's claims because there is no

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 1529566 (S.D.N.Y.)
(Cite as: 2005 WL 1529566 (S.D.N.Y.))

diversity of citizenship between the parties, and because Plaintiff's allegations in the Second Amended Complaint of inadequate medical care and treatment, which, according to St. Agnes, sound in negligence, fail to rise to the level of a constitutional violation because they do not indicate acts or omissions on the part of St. Agnes sufficient to show deliberate indifference to Plaintiff's serious medical needs. As a result, St. Agnes asserts, Plaintiff does not have a viable federal claim against St. Agnes under 42 U.S.C. § 1983.

"Courts generally hold that a case may be dismissed pursuant to Rule 12(b)(1) where a federal claim 'is so plainly insubstantial as to be devoid of any merits and thus does not present any issue worthy of adjudication.' " *Claudio v. United States,* No. CV-94-5220, 1996 WL 449329, at *2 (E.D.N.Y. July 31, 1996) (quoting *Nowak v. Ironworkers Local 6 Pension Fund,* 81 F.3d 1182, 1189 (2d Cir.1996)). "However, in cases where the asserted basis for subject matter jurisdiction is also an element of the plaintiff's allegedly federal cause of action, we ask only whether-on its face-the complaint is drawn so as to seek recovery under federal law or the Constitution. If so, then we assume or find a sufficient basis for jurisdiction, and reserve further scrutiny for an inquiry on the merits." *Id.* Thus, "Rule 12(b)(1) generally is not invoked except where the alleged federal question 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such claim is wholly insubstantial and frivolous.' " *Claudio,* 1996 WL 449329 at *3 (quoting *Bell v. Hood,* 327 U.S. 678, 682-83 (1946)). Here, the Court finds that the standard for granting a motion to dismiss pursuant to Rule 12(b)(1) has not been met. Accordingly, the Court denies St. Agnes' motion pursuant to Rule 12(b)(1) and will treat the motion as one to dismiss the complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) to the extent it is based on the sufficiency of Plaintiff's allegations to make out a valid Eighth Amendment claim.

**\*5** In resolving a motion to dismiss under Rule 12(b)(6), the Court must construe Plaintiff's allegations as true "and construe all well-pleaded factual allegations in the Complaint in plaintiff's favor." *Henneberry v. Sumitomo Corp. of America,* No. 04 Civ. 2128(PKL), 2005 WL 1036260, at *2 (S.D.N.Y. May 3, 2005) (citing *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.,* 375 F.3d 168, 175 (2d Cir.2004); *Allen v. Westpoint-Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991); *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)). A claim should be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). "*Pro se* complaints, however inartfully pleaded[,] are held to 'less stringent standards than formal [pleadings] drafted by lawyers.' " *Sanchez v. Fischer,* No. 03 Civ. 4433(GBD), 2005 WL 1021178, at *3 (S.D.N.Y. May 2, 2005) (quoting *Haines v. Kerner,* 404 U.S. 519, 520 (1972)). Therefore, in light of Plaintiff's *pro se* status, the Court will construe Plaintiff's Second Amended Complaint liberally and will also consider the materials submitted by Plaintiff in support of his summary judgment motion in evaluating whether Plaintiff has stated an Eighth Amendment claim and, to the extent he has not, whether any deficiency could be cured by amendment.

The Eighth Amendment "prohibits the infliction of 'cruel and unusual punishments,' " including those "that 'involve the unnecessary and wanton infliction of pain.' " *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998) (quoting *Gregg v. Georgia,* 428 U.S. 153, 173 (1976)). "In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.' " *Chance,* 143 F.3d at 702 (quoting *Estelle v. Gamble,* 429 U.S. 97, 104 (1976)).

The standard for establishing deliberate indifference includes both an objective and a subjective component. *Chance,* 143 F.3d at 702. "First, the deprivation suffered must be objectively serious;" there must exist a " 'condition of urgency, one that may produce death, degeneration, or extreme pain.' " *Dawson v. Williams,* No. 04 Civ. 1834(NRB), 2005 WL 475587, at *4

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 1529566 (S.D.N.Y.)
(Cite as: 2005 WL 1529566 (S.D.N.Y.))

(S.D.N.Y. Feb. 28, 2005) (quoting *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996) (internal quotations and citations omitted)). Second, "the defendant 'must act with a sufficiently culpable state of mind .' " *Chance,* 143 F.3d at 702 (quoting *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994)). "Deliberate indifference requires more than negligence but less than conduct undertaken for the very purpose of causing harm." *Hathaway,* 37 F.3d at 66. A plaintiff must allege that a prison official " 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." ' *Id.* (quoting *Farmer v. Brennan,* 511 U.S. at 837). "[M]ere medical malpractice is not tantamount to deliberate indifference, but it may rise to the level of deliberate indifference when it involves culpable recklessness, *i.e.,* an act or a failure to act ... that evinces a conscious disregard of a substantial risk of serious harm." *Cuoco v. Moritsugu,* 222 F.3d 99, 107 (2d Cir.2000) (internal quotation marks and citations omitted).

**\*6** Plaintiff alleges in his Second Amended Complaint that he was referred to St. Agnes by DOCS and that he received treatment from the medical staff at St. Agnes between August 25, 1997, and December 2, 1997. (Compl.¶¶ 44-45.) Plaintiff also alleges that Defendants Ramaswamy and St. Agnes deliberately failed to conduct certain medical testing, including a kidney biopsy, which could have uncovered the fact that Plaintiff was suffering from a treatable kidney disease. (*Id.* ¶¶ 45-49.) Plaintiff further alleges that, had the appropriate tests been conducted and the disease been diagnosed, Plaintiff might never have developed the life-threatening condition which he now suffers or become dependent on dialysis for his continued survival. (*Id.*)

The Court finds that Plaintiff's allegations that St. Agnes' alleged failure to conduct appropriate testing resulted in Plaintiff developing a life-threatening condition and a reliance on dialysis for survival are sufficient to establish the existence of a serious medical condition and, therefore, to satisfy the objective component of the analysis. As to the subjective prong, Plaintiff alleges in his Second Amended Complaint a "deliberate" failure on the part of St. Agnes to conduct a biopsy. While such an allegation in and of itself may be insufficient to show the requisite culpable mental state, Plaintiff has proffered evidence in connection with his motion for summary judgment from which a rational factfinder could conclude that St. Agnes and its personnel were aware of facts from which FSGS could have been diagnosed and, in failing to take additional diagnostic measures, disregarded an excessive risk of rapid degeneration into renal failure and a need for dialysis. The Court therefore finds that the subjective component of the analysis is satisfied. Accordingly, St. Agnes' motion to dismiss the complaint is denied to the extent it is based on a failure to state a claim upon which relief can be granted.

*Improper Service of Process*

St. Agnes also contends that the Second Amended Complaint should be dismissed on grounds of improper service of process because St. Agnes, a corporation, was not served in accordance with Fed.R.Civ.P. 4(h), which requires that service be effected

> in the manner prescribed for individuals by subdivision (e)(1), or by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant....

Fed.R.Civ.P. 4(h). Although the original complaint in this case was filed in October 2000, St. Agnes was not served at that time. (Affidavit of Laura B. Jordan, dated January 2, 2002, ("Jordan Aff.") ¶ 3). On November 21, 2001, St Agnes

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 1529566 (S.D.N.Y.)
(Cite as: 2005 WL 1529566 (S.D.N.Y.))

received via mail copies of the summons and the decision and order issued by District Judge William Skretny of the Western District of New York transferring the case to the Southern District of New York. (*Id.* ¶¶ 3-4.) Upon receipt of the summons and Judge Skretny's decision, St. Agnes, through its attorneys, served a demand for the complaint upon Plaintiff. (*Id.* ¶ 5, Ex. B.) On December 2, 2001, Plaintiff mailed a copy of the summons and amended complaint directly to St. Agnes' attorneys. (*Id.* ¶ 6, Ex. C.)

**\*7** The Court has discretion to decline to dismiss the complaint in order to allow Plaintiff an additional attempt at service. *Grammenos v. Lemos,* 457 F.2d 1067, 1071 (2d Cir.1972) ("the fact of invalidity of the one attempt at service does not automatically require dismissal of the complaint.... [T]he court has power, under Fed.R.Civ.P. 4(a), if the service is invalid or improper, to cause additional or new summons to be issued and good service attempted.") Further, "[w]hen dealing with *pro se* parties, courts interpret the rules dealing with service of process liberally." *St. John Rennalls v. County of Westchester,* 159 F.R .D. 418, 420 (S.D.N.Y.1994). Service requirements under Rule 4 are also construed liberally when "a party contesting service of process has received actual notice." *Id.*

In light of Plaintiff's *pro se* status, Plaintiff's multiple attempts at service, the fact that St. Agnes received actual notice of the instant action, and the fact that St. Agnes does not contend that it has suffered any prejudice as a result of Plaintiff's improper effectuation of service, the Court declines to dismiss the action based on Plaintiff's failure to effect proper service. Because counsel for St. Agnes has informed the Court that St. Agnes has ceased operations, the Court hereby directs counsel for St. Agnes to serve on Plaintiff and file with the Court within thirty (30) days of the date of this Opinion and Order a statement indicating where St. Agnes can currently be served. The Clerk's Office is directed to issue an amended summons to Plaintiff, and Plaintiff is directed to provide the amended summons, a copy of the Second Amended Complaint, and any other necessary paperwork, to the U.S. Marshals Service within

thirty (30) days of the date that Plaintiff receives the statement indicating where St. Agnes can be served. Plaintiff is directed to consult the Court's *Pro Se* Office (which is located at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, Room 230, New York, New York 10004) for information as to how he can obtain the amended summons from the Clerk's Office and effect service of process.

*Statute of Limitations*

St. Agnes also contends that the Second Amended Complaint should be dismissed because the applicable statutes of limitations have run on Plaintiff's federal and state law claims against St. Agnes.

*Plaintiff's § 1983 Claim*

"The statute of limitations for a section 1983 claim is determined from the forum state's statute of limitations for personal injury actions." *Taylor v. New York State Dep't of Corrections,* No. 03 Civ.1929(PKC), 2004 WL 2979910, at \*8 (S.D.N .Y. Dec. 22, 2004) (citing *Owens v. Okure,* 488 U.S. 235, 249-50 (1989)). In New York, which is the state where Plaintiff's claims arose, the statute of limitations for personal injury actions is three years. *Id.;* N.Y. C.P.L.R. § 214(5).

Here, St. Agnes argues that Plaintiff's section 1983 claims are untimely because the Second Amended Complaint, which was filed on or about April 23, 2001, was filed more than three years after the date Plaintiff alleges to be the last date he was treated at St. Agnes-December 2, 1997. St. Agnes concedes, however, that the original complaint in this case was filed on or about October 17, 2000, when Plaintiff "signed his hand-written complaint and sent it for filing in the U.S.D.C. for the W.D.N.Y."

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 1529566 (S.D.N.Y.)
(Cite as: 2005 WL 1529566 (S.D.N.Y.))

**\*8** Plaintiff invokes the relation-back doctrine, which "allows a plaintiff to assert a claim which would otherwise be barred by the statute of limitations if 'the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading ...'" *Colorado Capital v. Owens,* No. 03 CV 1126(JS)(WDW), 2005 WL 736539, at *8 (E.D.N.Y. Mar. 16, 2005)* (quoting Fed.R.Civ.P. 15(c)(2)). "The central inquiry under Rule 15(c) is 'whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading." ' *Hutchinson v. U.S.,* No. 01 CV. 1198(ILG), 2004 WL 350576, at *5 (E.D.N.Y. Feb. 20, 2004)* (quoting *Stevelman v. Alias Research, Inc.,* 174 F.3d 79, 86 (2d Cir.1999) (internal citation omitted)). Here, although the original complaint's allegations concerning St. Agnes were substantially the same as those of the Second Amended Complaint, St. Agnes never received a copy of the original complaint and only received notice of the instant action on or about November 21, 2001, when it received the summons and a copy of Judge Skretny's decision by mail. Thus, even if the claims against St. Agnes in the Second Amended Complaint were found to be sufficiently similar to relate back to the claims in the original complaint, St. Agnes did not receive timely notice of the matters raised in the original pleading. The Court concludes therefore that the relation-back doctrine does not apply to Plaintiff's section 1983 claim against St. Agnes.

The Court finds, nonetheless, that dismissal of the Second Amended Complaint on statute of limitations grounds as against St. Agnes is not warranted because Plaintiff may be able to establish that his section 1983 claim accrued after 1997. "While state law supplies the statute of limitations for claims under § 1983, federal law determines when a federal claim accrues. The claim accrues when the plaintiff knows or has reason to know of the harm." *Connolly v. McCall,* 254 F.3d 36, 41 (2d Cir.2001)* (internal quotation marks and citations omitted); *see also Veal v. Geraci,* 23 F.3d 722, 724 (2d Cir.1994)* ("A claim accrues once the plaintiff knows or has

reason to know of the injury which is the basis of his action.... [T]he claim accrues when the alleged conduct has caused the claimant harm and the claimant knows or has reason to know of the allegedly impermissible conduct and the resulting harm" (internal quotation marks and citations omitted)). Plaintiff contends that his federal claims did not accrue until July 31, 2000, when he allegedly learned for the first time through testimony in the *Candelaria I* litigation that St. Agnes and his personnel may have failed properly to diagnose him with FSGS and provide him with treatment that could have prevented him from developing renal failure and ESRD. (Compl. ¶¶ 46-49; Candelaria Aff. ¶¶ 10-11 .) It cannot be said at this stage of the litigation that Plaintiff will be unable to prove that he first learned of the allegedly improper conduct of St. Agnes and the alleged resulting injury within the three years preceding the first occasion on which St. Agnes received notice of the claims in this litigation. St. Agnes' motion to dismiss the Second Amended Complaint on statute of limitations grounds is therefore denied.

*Plaintiff's State Law Medical Malpractice Claim*

**\*9** As to Plaintiff's state law medical malpractice claims against St. Agnes, the applicable statute of limitations under New York law is two years and six months. *Haq v. New York Presbyterian Hosp. Cornell Med. Ctr.,* No. 00 CIV. 6312(JSM), 2001 WL 1135705, at *2 (S.D.N.Y. Sept. 26, 2001);* N.Y. C.P.L.R. § 214-a. Section 214-a provides, in relevant part, as follows:

An action for medical, dental or podiatric malpractice must be commenced within two years and six months of the act, omission or failure complained of or last treatment where there is continuous treatment for the same illness, injury or condition which gave rise to the said act, omission or failure; provided, however, that where the action is based upon the discovery of a foreign object in the body of the patient, the action may be commenced within one year of the date of

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 1529566 (S.D.N.Y.)
(Cite as: 2005 WL 1529566 (S.D.N.Y.))

such discovery or of the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier.

N.Y.C.P.L.R. 214-a (McKinney 2003). Thus, under New York law, the accrual of a cause of action for medical malpractice not based upon the discovery of a foreign object in the body of the patient is measured from the date of the occurrence of the act, omission or failure complained of as opposed to the date of the discovery of the injury. *Helgans v. Plurad,* 255 A.D.2d 554, 555 (2d Dept.1998). The date of accrual of Plaintiff's state law medical malpractice claims for statute of limitations purposes, therefore, is December 2, 1997-the last date on which Plaintiff was treated at St. Agnes. Therefore, since Plaintiff's state law medical malpractice claim accrued on December 2, 1997, and the Second Amended Complaint was not filed until April 23, 2001, it would appear that Plaintiff's state law claims against St. Agnes are barred by the statute of limitations.

The relation-back doctrine does not apply to save Plaintiff's state law claim against St. Agnes for the same reason it did not apply to save Plaintiff's section 1983 claim against St. Agnes-St. Agnes did not receive timely notice of the original complaint. As to Plaintiff's argument that St. Agnes waived the statute of limitations defense because its first two "pleadings" were devoid of reference to such a defense, as St. Agnes points out in its reply papers, the first document to which Plaintiff refers, dated November 26, 2001, is not a responsive pleading but a "Demand For Complaint," and the second document to which Plaintiff refers is also not a responsive pleading but rather papers filed in opposition to a motion for a default judgment. Since neither was a responsive pleading within the meaning of Fed.R.Civ.P. 8(c), and Defendant St. Agnes asserted its statute of limitations defense in a timely manner in the instant motion to dismiss, St. Agnes cannot be said to have waived the statute of limitations defense.

Plaintiff also contends that St. Agnes should be precluded from asserting the statute of limitations under the doctrine of equitable estoppel because Plaintiff justifiably relied on representations from St. Agnes staff members that his conditions were the result of high blood pressure and an inability to obtain a renal diet until learning otherwise via the testimony of the two expert witnesses after the statute of limitations had run. "It is the rule that a defendant may be estopped to plead the Statute of Limitations where plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action." *Simcuski v. Saeli,* 44 N.Y .2d 442, 448-49 (N.Y.1978). " 'The elements of estoppel are with respect to the party estopped: (1) conduct which amounts to a false representation or concealment of material facts; (2) intention that such conduct will be acted upon by the other party; and (3) knowledge of the real facts." ' *Smith v. Smith,* 830 F.2d 11, 12 (2d Cir.1987) (quoting *Airco Alloys Div., Airco Inc. v. Niagra Mohawk Power Corp.,* 430 N.Y.S.2d 179 (1980)).

*10 Here, the Court finds that Plaintiff's allegations and evidentiary proffers can be construed to suggest that the staff at St. Agnes had sufficient information via lab reports and other data collected concerning Plaintiff's medical history to warrant suspicion that Plaintiff might be suffering from FSGS. The Court further finds that Plaintiff's allegations and proffers can be construed to suggest that St. Agnes' staff, instead of performing additional tests and other work in an effort to heal Plaintiff, simply told Plaintiff that he had hypertension and had no choice but to undergo dialysis, thereby inducing Plaintiff to refrain from suing or otherwise challenging their failure to provide him with any alternative type of care for his kidney problems. The Court finds that it is not possible at this stage of the litigation to determine whether Plaintiff will be able to satisfy the elements of equitable estoppel.

Accordingly, St. Agnes' motion to dismiss Plaintiff's state law medical malpractice claims on statute of limitations grounds is denied.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 1529566 (S.D.N.Y.)
(Cite as: 2005 WL 1529566 (S.D.N.Y.))

*Plaintiff's Motion for a Default Judgment as to Defendant Ramaswamy and for an Order Striking Ramaswamy's Untimely Answer, and Ramaswamy's Motion for an Order Permitting the Late Service and Filing of Ramaswamy's Answer*

Plaintiff moves for a default judgment as to Defendant Ramaswamy and for an order striking Ramaswamy's untimely answer.[FN5] Plaintiff contends that copies of the summons and complaint were served on Defendant Ramaswamy on December 14, 2001, and that Ramaswamy's answer was not timely filed thereafter. Ramaswamy, conceding that her answer was not timely filed, opposes Plaintiff's motion and moves for an order permitting the late service and filing of her answer.

FN5. In the same submission, Plaintiff also moves for a stay of all discovery pending resolution of Plaintiff's motions for default judgment, for an order compelling the N.Y.S. Attorney General to provide a mailing address where Defendant Erickson can be served with process, and for an order enlarging the time within which to effectuate services of process as to Erickson. Plaintiff's motion for a stay of discovery is denied as moot given that Plaintiff's motion for a default judgment as to St. Agnes was denied on March 13, 2002, and Plaintiff's remaining motions for default judgments as to Ramaswamy and Erickson are resolved herein. Plaintiff's motion for an order compelling the N.Y.S. Attorney General to provide a mailing address is also denied, because the Court issued such an order on March 6, 2002. Finally, Plaintiff's request for more time to serve Erickson is terminated as moot given that 1) Plaintiff's request was already granted by Order dated April 18, 2002, and 2) the Court's records contain certifications that Plaintiff mailed a copy of the summons, amended complaint and all supporting papers to Erickson on

August 14, 2002, and that a process server, on or about August 16, 2002, served Erickson with copies of the summons and the Second Amended Complaint. (*See* Affirmation in Support of Plaintiff's Motion for a Default Judgment Against Erickson, dated October 15, 2003, ¶¶ 10-11, Exs. 12-14.)

Opposition to a motion for a default judgment is evaluated under the same "good cause shown" standard that is used to evaluate motions to set aside an entry of default pursuant to Fed.R.Civ.P. 55(c). *Commercial Bank of Kuwait v. Rafidain Bank,* 15 F.3d 238, 243 (2d Cir.1994). The Second Circuit has established three criteria that a court should assess in determining whether to grant relief from an entry or judgment of default for "good cause": "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." Other "equitable factors" may also be considered–"for instance, whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result." *Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 96 (2d Cir.1993). Generally, defaults are disfavored and resolution of cases on the merits is strongly preferred. *See Meehan v. Snow,* 652 F.2d 274, 277 (2d Cir.1981).

Defendant Ramaswamy points out that Plaintiff's motion for a default judgment is not in compliance with S.D.N.Y. Local Civil Rule 55.2, and is therefore procedurally defective, because it does not include the clerk's certificate of default, a copy of the claim to which no response was made, and a proposed form of default judgment. In addition, Ramaswamy argues that the delay in serving and filing Ramaswamy's answer was not willful, that the delay caused no prejudice to Plaintiff, and that Ramaswamy has a meritorious defense.

**\*11** The Court has considered carefully all of the relevant criteria and finds that good cause does exist to grant Ramaswamy relief from the entry of default. As to willfulness,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 1529566 (S.D.N.Y.)
(Cite as: 2005 WL 1529566 (S.D.N.Y.))

Ramaswamy has proffered evidence that her failure to timely file an answer was the result of a clerical error on the part of her attorney and his staff. More specifically, Ramaswamy has proffered evidence that Eleanor Goldberg, the secretary of Ramaswamy's attorney, Bruce M. Brady, entered the instant case into Brady's calendar system upon receiving the complaint on December 28, 2001, and made a diary entry intended to remind Brady to file a timely answer but that, in the wake of Goldberg's retirement days after the complaint was received and the ensuing transition to a new secretary, as well as Brady's engagement in two trials in state court which lasted until March 2002, the due date for the answer was overlooked, and the oversight was not discovered until March 2002. (Declaration of Bruce M. Brady, dated May 21, 2002, ("Brady Decl.") ¶¶ 3-5.) Upon discovering the error, Brady promptly attempted to file Ramaswamy's answer. (*Id.* ¶ 5.)

"Imprudent, inattentive, careless, or even negligent handling of a case, although not to be condoned, does not demonstrate willfulness." *Gravatt v. City of New York, et al.,* No. 97 Civ. 0354(RWS), 1997 WL 419955, at *3 (S.D.N.Y. July 28, 1997) (internal quotation marks and citation omitted). "The Court must look for bad faith or something more than mere negligence before rejecting a claim of excusable neglect based on an attorney's or a litigant's error." *Id.* Here, no evidence of bad faith has been proffered and it is clear that Ramaswamy's answer was filed late due to a clerical error. Thus, the Court finds that Ramaswamy's failure to file a timely answer was not willful.

In addition, the Court finds that the approximately three-month delay in answering Plaintiff's complaint did not cause Plaintiff significant prejudice, given that discovery, which had only begun in a limited fashion as of the time the instant motions were filed, was not meaningfully delayed due to the lateness of Ramaswamy's answer. Further, Ramaswamy has presented a potentially meritorious defense. "To satisfy the requirement that a defaulting party demonstrate the existence of a meritorious defense, the defense need not be ultimately persuasive at this stage." *Id.* at 4. A defendant "must merely make a sufficient showing to justify further briefing and consideration by the district judge." *Id.* Ramaswamy has proffered evidence that Ramaswamy had no responsibility for, and was not involved in, decisions relating to Plaintiff's treatment. Ramaswamy also denies that she was the Medical Director of St. Agnes, contending rather that she was the head of the hospital's pathology laboratory.

Therefore, the Court concludes that the relevant factors weigh in favor of a finding of good cause to permit Ramaswamy's late-filed answer to stand. Accordingly, Plaintiff's motion for a default judgment as to Defendant Ramaswamy and an order striking Ramaswamy's untimely answer is denied, and Ramaswamy's motion for an order permitting the late service and filing of her answer is granted.

*Defendant Ramaswamy's Motion for Summary Judgment*

**\*12** Defendant Ramaswamy moves for summary judgment pursuant to Fed.R.Civ.P. 56(c) with respect to all of Plaintiff's claims against her. Ramaswamy contends that Plaintiff's claims against her should be dismissed because there was no doctor-patient relationship between Ramaswamy and Plaintiff and that, therefore, Ramaswamy did not breach any standard of care with regard to medical treatment rendered to Plaintiff. Ramaswamy also argues that, since she was not involved in any decisions concerning the medical care and treatment of Plaintiff, the Court lacks subject matter jurisdiction of Plaintiff's claims against Ramaswamy. Finally, Ramaswamy asserts that Plaintiff's claims against her are barred by the applicable statutes of limitations.

A motion for summary judgment shall not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that

Not Reported in F.Supp.2d, 2005 WL 1529566 (S.D.N.Y.)
(Cite as: 2005 WL 1529566 (S.D.N.Y.))

the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). " ' The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law." ' *Bear, Stearns Funding, Inc. v. Interface Group-Nevada, Inc.,* 361 F.Supp.2d 283, 290 (S.D.N.Y.2005) (quoting *Rodriguez v. City of New York,* 72 F.3d 1051, 1060-61 (2d Cir.1995)). "In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party." *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). Summary judgment should be denied "[i]f there is 'any evidence in the record from any source from which a reasonable inference could be drawn in favor of the non-moving party." ' *Id.* (quoting *Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 37 (2d. Cir.1994).

*Ramaswamy's Role in Plaintiff's Medical Treatment*

Ramaswamy proffers evidence in the form of her own affidavit asserting that she was not personally involved in any of the medical decisions made at St. Agnes concerning Plaintiff, that she had never heard of Plaintiff before being served with copies of the summons and complaint in this case, and that, contrary to the allegations in Plaintiff's Second Amended Complaint, Ramaswamy was never the Medical Director of St. Agnes. (Affidavit of Gita Ramaswamy, dated April 23, 2002 ("Ramaswamy Aff.") ¶¶ 5-9.) Ramaswamy further asserts in her affidavit that she was the Director of the Pathology Laboratory at St. Agnes during the relevant time period, and that in that capacity she "never made treatment decisions concerning patients at the hospital" and never was "responsible for the training of medical personnel in the diagnosis and management of medical conditions." (*Id.* ¶¶ 6, 9.) Ramaswamy contends that, since she had no involvement in Plaintiff's medical care, Plaintiff can neither make out a *prima facie* case of medical malpractice under New York law nor meet the standards of proof required for a section 1983 claim as to

Ramaswamy.

*13 Plaintiff has proffered laboratory reports from his medical records relating to his stays at St. Agnes during the relevant period which, near the top of each page, read as follows:

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 1529566 (S.D.N.Y.)
(Cite as: 2005 WL 1529566 (S.D.N.Y.))

St. Agnes Hospital
305 North Street, White Plains, N.Y. 10605
Gita Ramaswamy, MD, Director

(Plaintiff's R.56.1(a) Stmt., Exs. D-4-D-9.) Further, Plaintiff asserts in his affidavit in support of his cross-motion for summary judgment that "[t]hroughout my stays in St. Agnes Hospital, the medical personal (sic) and the treating physicians represented to me that the team of nephrologists that were being (sic) treating me were employed by St. Agnes Hospital and that Gita Ramaswamy was, in fact, the medical director of St. Agnes Hospital." (Candelaria Aff. ¶ 13.) The Court finds that, even viewing the evidence in the light most favorable to Plaintiff, the non-moving party, no material issue of disputed fact exists as to what Ramaswamy's position was during the relevant period or as to what Ramaswamy's role, if any, was in the medical care provided to Plaintiff at St. Agnes during the relevant period. Plaintiff has proffered no admissible evidence contraverting Ramaswamy's affidavit. The presence of Ramaswamy's name on the laboratory reports is consistent with Ramaswamy's assertion that she was the Director only of the Pathology Laboratory, and Plaintiff has not proffered any other hospital documentation naming Ramaswamy as director. His conclusory assertions in his affidavit, relating to alleged representations by unidentified hospital personnel and treating physicians, are hearsay and are thus insufficient to frame a genuine issue of material fact in this regard. Therefore, Ramaswamy is entitled to judgment as a matter of law and her motion for summary judgment is granted.

*Plaintiff's Cross-Motion for Summary Judgment as to Plaintiff's Claims Against Defendants St. Agnes and Ramaswamy*

In response to St. Agnes' motion to dismiss and Ramaswamy's motion for summary judgment, Plaintiff cross-moves for summary judgment on his section 1983 and New York state law medical malpractice claims against both St. Agnes and Ramaswamy.

For the reasons explained above, Ramaswamy's summary judgment motion is granted. For substantially the same reasons, Plaintiff's cross-motion against Ramaswamy is denied.

As to Plaintiff's section 1983 and medical malpractice claims against St. Agnes, the Court finds that, viewing the evidence in the light most favorable to the non-moving party, there are material issues of disputed fact which preclude the granting of summary judgment in Plaintiff's favor. Plaintiff's claims are predicated on his allegations that the medical staff at St. Agnes failed to diagnose his treatable underlying kidney disease FSGS. Plaintiff contends that, had this disease been diagnosed and treated in a timely fashion, he might never have become dependent on dialysis for survival. Plaintiff proffers evidence to support these allegations in the form of transcripts of the testimony of two expert witness in a related case. St. Agnes, however, has proffered evidence in the form of medical records from the relevant period indicating that Plaintiff was diagnosed with FSGS and that the possibility of doing a biopsy, and the rationale for not performing the procedure, were discussed with Plaintiff. (Affidavit of Laura B. Jordan, dated July 31, 2002, ("Jordan Aff."), Ex. A.) Thus, there is a material issue of disputed fact as to whether the medical staff at St. Agnes failed to properly diagnose and treat Plaintiff's underlying kidney disease.

**\*14** Plaintiff's motion for summary judgment is therefore denied.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 1529566 (S.D.N.Y.)
(Cite as: 2005 WL 1529566 (S.D.N.Y.))

*Plaintiff's Motion for Sanctions Pursuant to Fed.R.Civ.P. 11*

Plaintiff has also moved pursuant to Fed.R.Civ.P. 11 for "sanction-for out-of-pocket expense incurred in preparing" his summary judgment motion and his opposition to Ramaswamy's motion for summary judgment. Plaintiff has not, however, demonstrated compliance with the procedural provisions of Rule 11, which require service and a 21-day waiting period before any motion is filed with the Court so that the non-moving party has an opportunity to withdraw the allegedly offending submission." Fed.R.Civ.P. 11(c)(1)(A). In addition, in light of the Court's disposition of Ramaswamy's motion, the Court clearly cannot conclude, with respect to the legal position taken in Ramaswamy's motion for summary judgment, that under existing precedents "there [was] no chance of success and no reasonable argument to extend, modify or reverse the law as it stands." *Mareno v. Rowe,* 910 F.2d 1043, 1047 (2d Cir.1990). Thus, the Court finds that there is no substantive basis for the imposition of a sanction here. Plaintiff's motion for Rule 11 sanctions is denied.

*Plaintiff's Motion for a Default Judgment Against Defendant Erickson*

On January 27, 2004, Plaintiff filed a motion for a default judgment on his claims against Defendant Erickson. Plaintiff's motion is not in compliance with Local Civil Rule 55.2, which provides, in pertinent part, that a "party seeking a judgment by default shall apply to the court as described in Federal Rule of Civil Procedure 55(b)(2), and shall append to the application (1) the clerk's certificate of default, (2) a copy of the claim to which no response has been made, and (3) a proposed form of default judgment." Local Civil Rule 55.2(b). Plaintiff's submissions in support of his motion do not include the clerk's certificate of default or a proposed form of a judgment. Plaintiff also failed to comply with Rule 2.C. (formerly Rule 1.A.2.) of the Individual Practices of the undersigned, which requires a party wishing to obtain a default judgment to notify the Court by letter of its desire to seek a default judgment

before making the motion, and to include a copy of the clerk's certificate of default along with the party's motion papers.

Accordingly, Plaintiff's motion for a default judgment as to Erickson is denied without prejudice to renewal upon compliance with S.D.N.Y. Local Rule 55.2 and the order, authorizing an application for a default judgment, issued concurrently herewith. The Court deems the filing and service of Plaintiff's earlier motion to be substantial compliance with the requirements of Rule 2.C. of the Individual Practices Rules.

Plaintiff is hereby directed to contact this Court's *Pro Se* Office (which is located at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, Room 230, New York, New York 10004, telephone (212) 805-0177) for further guidance as to compliance with the relevant procedures.

*CONCLUSIONS*

**\*15** For the foregoing reasons, Defendant St. Agnes' motion to dismiss the Second Amended Complaint is denied. The Court hereby directs counsel for St. Agnes to serve on Plaintiff and file with the Court within thirty (30) days of the date of this Opinion and Order a statement indicating where St. Agnes can currently be served. The Clerk's Office is directed to issue a amended summons to Plaintiff, and Plaintiff is directed to provide the amended summons, a copy of the Second Amended Complaint, and any other necessary paperwork, to the U.S. Marshals Service within thirty (30) days of the date that Plaintiff receives the statement indicating where St. Agnes can be served. Plaintiff is directed to consult the Court's *Pro Se* Office (which is located at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, Room 230, New York, New York 10004, telephone (212) 805-0177) for information as to how he can obtain the amended summons from the Clerk's Office and effect service of process.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 1529566 (S.D.N.Y.)
(Cite as: 2005 WL 1529566 (S.D.N.Y.))

Plaintiff's motion for a default judgment against Ramaswamy and for an order striking Ramaswamy's untimely answer is denied. Ramaswamy's motion for an order permitting the late service and filing of Ramaswamy's answer is granted. Ramaswamy's motion for summary judgment pursuant to Fed.R.Civ.P. 56 is granted.

Plaintiff's cross-motion for summary judgment pursuant to Fed.R.Civ.P. 56 is denied. Plaintiff's motion for Rule 11 sanctions as to Ramaswamy is denied.

Plaintiff's motion for a default judgment against Defendant Erickson is denied without prejudice to renewal upon compliance with S.D.N.Y. Local Rule 55.2 and the order, authorizing an application for a default judgment, issued concurrently herewith. The Court deems the filing and service of Plaintiff's earlier motion to be substantial compliance with the requirements of Rule 2.C. of the Individual Practices Rules. Plaintiff is hereby directed to contact this Court's *Pro Se* Office for further guidance as to compliance with the relevant procedures.

SO ORDERED.

S.D.N.Y.,2005.
Candelaria v. Erickson
Not Reported in F.Supp.2d, 2005 WL 1529566 (S.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Page 1

Not Reported in F.Supp.2d, 2002 WL 31309244 (N.D.N.Y.)
(Cite as: 2002 WL 31309244 (N.D.N.Y.))

**C** Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Karus LAFAVE, Plaintiff,
v.
CLINTON COUNTY, Defendants.
**No. CIV.9:00CV0744DNHGLS.**

April 3, 2002.

Karus Lafave, Plaintiff, Pro Se, Plattsburgh, for the Plaintiff.

Maynard, O'Connor Law Firm, Albany, Edwin J. Tobin, Jr., Esq., for the Defendants.

REPORT-RECOMMENDATION [FN1]

FN1. This matter was referred to the undersigned for Report-Recommendation by the Hon. David N. Hurd, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1)(B) and L.R. 72.3(c).
SHARPE, Magistrate J.

I. INTRODUCTION

**\*1** Plaintiff, *pro se,* Karus LaFave ("LaFave") originally filed this action in Clinton County Supreme Court. The

defendant filed a Notice of Removal because the complaint presented a federal question concerning a violation of LaFave's Eighth Amendment rights (Dkt. No. 1). Currently before the court is the defendant's motion to dismiss made pursuant to Rule 12(b)(6) and in the alternative, pursuant to Rule 56(b) of the Federal Rules of Civil Procedure (Dkt. No. 5). LaFave, in response, is requesting that the court deny the motion, excuse his inability to timely file several motions, and to permit the matter to be bought before a jury [FN2]. After reviewing LaFave's claims and for the reasons set forth below, the defendant's converted motion for summary judgment should be granted.

FN2. It should be noted that the date for dispositive motions was February 16, 2001. The defendant's motion to dismiss was filed on September 29, 2000. On January 9, 2001, this court converted the defendant's motion to dismiss to a motion for summary judgment, and gave LaFave a month to respond. On April 16, 2001, after three months and four extensions, LaFave finally responded.

II. BACKGROUND

LaFave brings this action under 42 U.S.C. § 1983 claiming that the defendant violated his civil rights under the Eighth Amendment [FN3]. He alleges that the defendant failed to provide adequate medical and dental care causing three different teeth to be extracted.

FN3. LaFave does not specifically state that the defendant violated his Eighth Amendment rights but this conclusion is appropriate after reviewing

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31309244 (N.D.N.Y.)
(Cite as: 2002 WL 31309244 (N.D.N.Y.))

the complaint.

### III. FACTS [FN4]

**FN4.** While the defendant provided the court with a "statement of material facts not in issue" and LaFave provided the court with "statement of material facts genuine in issue," neither provided the court with the exact nature of the facts.

Between January and July of 1999, LaFave, on several occasions, requested dental treatment because he was experiencing severe pain with three of his teeth. After being seen on several occasions by a Clinton County Correctional Facility ("Clinton") doctor, he was referred to a dentist. Initially, LaFave's mother had made an appointment for him to see a dentist, but he alleges that Nurse LaBarge ("LaBarge") did not permit him to be released to the dentist's office [FN5]. Subsequently, he was seen by Dr. Boule, D.D.S ., on two occasions for dental examinations and tooth extractions.

**FN5.** This appears to be in dispute because the medical records show that LaFave at first stated that his mother was going to make arrangements, but later requested that the facility provide a dentist.

### IV. DISCUSSION

A. *Legal Standard*

Summary judgment shall be granted "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc .,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *accord F.D.I.C. v. Giammettei,* 34 F.3d 51, 54 (2d Cir.1994). The moving party has the burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once this burden is met, it shifts to the opposing party who, through affidavits or otherwise, must show that there is a material factual issue for trial. Fed.R.Civ.P. 56(e); *see Smythe v. American Red Cross Blood Services Northeastern New York Region,* 797 F.Supp. 147, 151 (N.D.N.Y.1992).

Finally, when considering summary judgment motions, *pro se* parties are held to a less stringent standard than attorneys. *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Haines v. Kerner,* 404 U.S. 519, 520-21, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972). Any ambiguities and inferences drawn from the facts must be viewed in the light most favorable to the non-moving party. *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990). With this standard in mind, the court now turns to the sufficiency of LaFave's claims.

B. *Eighth Amendment Claims*

**\*2** LaFave alleges that his Eighth Amendment rights were violated when the defendant failed to provide adequate medical care for his dental condition. The Eighth Amendment does not mandate comfortable prisons, yet it does not tolerate inhumane prisons either, and the conditions of an inmate's confinement are subject to examination under the Eighth Amendment. *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 1975, 128

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31309244 (N.D.N.Y.)

(Cite as: 2002 WL 31309244 (N.D.N.Y.))

L.Ed.2d 811 (1994). Nevertheless, deprivations suffered by inmates as a result of their incarceration only become reprehensible to the Eighth Amendment when they deny the minimal civilized measure of life's necessities. *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991) (*quoting Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981)).

Moreover, the Eighth Amendment embodies "broad and idealistic concepts of dignity, civilized standards, humanity, and decency ..." against which penal measures must be evaluated. See *Estelle v. Gamble,* 429 U.S. 97, 102, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976). Repugnant to the Amendment are punishments hostile to the standards of decency that " 'mark the progress of a maturing society." ' *Id.* (*quoting Trop v. Dulles,* 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958) (plurality opinion)). Also repugnant to the Amendment, are punishments that involve " 'unnecessary and wanton inflictions of pain." ' *Id.* at 103, 97 S.Ct. at 290 (*quoting Gregg v. Georgia,* 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976)).

In light of these elementary principles, a state has a constitutional obligation to provide inmates adequate medical care. See *West v. Atkins,* 487 U.S. 42, 54, 108 S.Ct. 2250, 2258, 101 L.Ed.2d 40 (1988). By virtue of their incarceration, inmates are utterly dependant upon prison authorities to treat their medical ills and are wholly powerless to help themselves if the state languishes in its obligation. See *Estelle,* 429 U.S. at 103, 97 S.Ct. at 290. The essence of an improper medical treatment claim lies in proof of "deliberate indifference to serious medical needs." *Id.* at 104, 97 S.Ct. at 291. Deliberate indifference may be manifested by a prison doctor's response to an inmate's needs. *Id.* It may also be shown by a corrections officer denying or delaying an inmate's access to medical care or by intentionally interfering with an inmate's treatment. *Id.* at 104-105, 97 S.Ct. at 291.

The standard of deliberate indifference includes both subjective and objective components. The objective component requires the alleged deprivation to be sufficiently serious, while the subjective component requires the defendant to act with a sufficiently culpable state of mind. See *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998). A prison official acts with deliberate indifference when he " 'knows of and disregards an excessive risk to inmate health or safety." ' *Id.* (*quoting Farmer,* 511 U.S. at 837, 114 S.Ct. at 1979). However, " 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." ' *Id.*

**\*3** However, an Eighth Amendment claim may be dismissed if there is no evidence that a defendant acted with deliberate indifference to a serious medical need. An inmate does not have a right to the treatment of his choice. See *Murphy v. Grabo,* 1998 WL 166840, at \*4 (N.D.N.Y. April 9, 1998) (*citation omitted* ). Also, mere disagreement with the prescribed course of treatment does not always rise to the level of a constitutional claim. See *Chance,* 143 F.3d at 703. Moreover, prison officials have broad discretion to determine the nature and character of medical treatment which is provided to inmates. See *Murphy,* 1998 WL 166840, at \*4 (*citation omitted* ).

While there is no exact definition of a "serious medical condition" in this circuit, the Second Circuit has indicated what injuries and medical conditions are serious enough to implicate the Eighth Amendment. See *Chance,* 143 F.3d at 702-703. In *Chance,* the Second Circuit held that an inmate complaining of a dental condition stated a serious medical need by showing that he suffered from great pain for six months. The inmate was also unable to chew food and lost several teeth. The Circuit also recognized that

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31309244 (N.D.N.Y.)
(Cite as: 2002 WL 31309244 (N.D.N.Y.))

dental conditions, along with medical conditions, can vary in severity and may not all be severe. *Id.* at 702. The court acknowledged that while some injuries are not serious enough to violate a constitutional right, other very similar injuries can violate a constitutional right under different factual circumstances. *Id.*

The Second Circuit provided some of the factors to be considered when determining if a serious medical condition exists. *Id.* at 702-703. The court stated that " '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain" ' are highly relevant. *Id.* at 702-703 *(citation omitted* ). Moreover, when seeking to impose liability on a municipality, as LaFave does in this case, he must show that a municipal "policy" or "custom caused the deprivation." *Wimmer v. Suffolk County Police Dep't,* 176 F.3d 125, 137 (2d Cir.1999).

In this case, the defendant maintains that the medical staff was not deliberately indifferent to his serious medical needs. As a basis for their assertion, they provide LaFave's medical records and an affidavit from Dr. Viqar Qudsi,[FN6] M.D, who treated LaFave while he was incarcerated at Clinton. The medical records show that he was repeatedly seen, and prescribed medication for his pain. In addition, the record shows that on various occasions, LaFave refused medication because "he was too lazy" to get out of bed when the nurse with the medication came to his cell (*Def. ['s] Ex. A, P. 4)* .

    FN6. Dr. Qudsi is not a party to this action.

According to the documents provided, Dr. Qudsi, examined LaFave on January 13, 1999, after LaFave reported to LaBarge that he had a headache and discomfort in his bottom left molar (*Qudsi Aff., P. 2*). Dr. Qudsi noted that a cavity was present in his left lower molar. *Id.* He prescribed Tylenol as needed for the pain and 500 milligrams ("mg") of erythromycin twice daily to prevent bacteria and infection. *Id.* On January 18, 19, and 20, 1999, the medical records show that LaFave refused his erythromycin medication (*Def. ['s] Ex. B, P. 1*).

*4 Between January 20, and April 12, 1999, LaFave made no complaints concerning his alleged mouth pain. On April 12, 1999, LaFave was examined by LaBarge due to a complaint of pain in his lower left molar (*Def. ['s] Ex. A, P. 4* ). Dr. Qudsi examined him again on April 14, 1999. *Id.* He noted a cavity with pulp decay and slight swelling with no discharge. *Id.* He noted an abscess in his left lower molar and again prescribed 500 mg erythromycin tablets twice daily and 600 mg of Motrin three times daily for ten days with instructions to see the dentist. *Id.* On the same day, LaBarge made an appointment for LaFave to see an outside dentist that provides dental service to facility inmates, Dr. Boule *(Qudsi Aff., P. 3).*

On May 3, 1999, LaBarge was informed by LaFave that his mother would be making a dental appointment with their own dentist and that the family would pay for the treatment (*Def. ['s] Ex. A, P. 4* ). On that same day, Superintendent Major Smith authorized an outside dental visit. *Id.* On May 12, 1999, he was seen by LaBarge for an unrelated injury and he complained about his lower left molar (*Def .['s] Ex. A, P. 5* ). At that time, LaFave requested that LaBarge schedule a new appointment with Dr. Boule because the family had changed their mind about paying an outside dentist. *Id.* LaBarge noted that he was eating candy and informed him of the deleterious effects of candy on his dental condition. *Id.* Thereafter, LaBarge scheduled him for the next available date which was June 24, 1999, at noon. *Id.*

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31309244 (N.D.N.Y.)
(Cite as: 2002 WL 31309244 (N.D.N.Y.))

On June 2, 1999, LaFave again requested sick call complaining for the first time about tooth pain in his upper right molar and his other lower left molar (*Def. ['s] Ex. A, P. 6* ). He claimed that both molars caused him discomfort and bothered him most at night. *Id.* LaFave confirmed that he had received treatment from Dr. Boule for his first lower left molar one week before. *Id.* The area of his prior extraction was clean and dry. *Id.* There was no abscess, infection, swelling, drainage or foul odor noted. *Id.* LaBarge recommended Tylenol as needed for any further tooth discomfort. *Id.*

On June 21, 1999, LaFave again requested a sick call and was seen by LaBarge (*Def. ['s] Ex. A, P. 6* ). No swelling, drainage or infection was observed. *Id.* However, LaBarge noted cavities in LaFave's lower left molar and right lower molars. *Id.* LaBarge made arrangements for Dr. Qudsi to further assess LaFave. *Id.* On June 23, 1999, Dr. Qudsi examined his right lower molar and noted cavitation with decay in that area (*Def. ['s] Ex. A, P. 7* ). In addition, he noted that LaFave had a cavity in his second left lower molar. *Id.* He prescribed 500 mg of erythromycin twice daily for 10 days and 600 mg of Motrin three times daily for 10 days, with instructions to see a dentist. *Id.*

On June 30, 1999, Officer Carroll reported that LaFave was again non-compliant with his medication regimen as he refused to get up to receive his medication (*Def. ['s] Ex. A, P. 8* ). On July 7, 1999, he again requested sick call complaining of a toothache in his lower right molar (*Def. ['s] Ex. A, P. 9* ). Again, LaFave was non-compliant as he had only taken his erythromycin for five days instead of the ten days prescribed. *Id.* During the examination, Dr. Qudsi informed LaFave that extraction of these teeth could be necessary if he did not respond to conservative treatment. *Id.* At that time, LaFave informed Dr. Qudsi that he was going to be transferred to another facility. *Id.*

Dr. Qudsi advised LaFave to follow-up with a dentist when he arrived at the new facility. *Id.* Dr. Qudsi prescribed 500 mg Naproxin twice daily for thirty days with instructions to follow-up with him in two weeks if the pain increased. *Id.* The following day, LaFave requested sick call complaining to LaBarge that he had taken one dose of Naproxin and it was not relieving the pain. *Id.* He was advised that he needed to take more than one dose to allow the Naproxin to take effect. *Id.*

**\*5** On July 17, 1999, LaFave was again seen by Dr. Qudsi and he indicated that he did not believe he was benefitting from the prescribed course of conservative treatment with medication (*Def. ['s] Ex. A, P. 10* ). Subsequently, LaBarge made a dental appointment for him on July 23 [FN7], 1999, at 3:15 p.m. *Id.* On July 23, 1999, a second extraction was conducted. *Id.* On July 28, 1999, he was again seen by Dr. Qudsi, for an ulceration at the left angle of his mouth for which he prescribed bacitracin ointment. *Id.* At this time, LaFave continued to complain of tooth pain so he was prescribed 600 mg of Motrin three times daily. *Id.*

> FN7. The medical records contain an error on the July 17, 1999, note which indicted that an appointment was set for June 23, 1999, however, it should have been recorded as July 23, 1999.

On August 4, 1999, he was seen for feeling a sharp piece of bone residing in the area of his lower left molar (*Def. ['s] Ex. A, P. 11* ). Dr. Qudsi recommended observation and to follow-up with dental care if his condition continued. *Id.* The defendant maintains that given all of the documentation that he was seen when he requested to be seen and prescribed numerous medications, the medical staff was not deliberately indifferent to his serious medical needs. The defendant contends that at all times, professional and contentious dental and medical treatment

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31309244 (N.D.N.Y.)
(Cite as: 2002 WL 31309244 (N.D.N.Y.))

were provided in regards to his various complaints.

In his response, LaFave disagrees alleging that the county had a custom or policy not to provide medical treatment to prisoners. However, LaFave does not allege in his complaint that the county had a "custom or policy" which deprived him of a right to adequate medical or dental care. In his response to the motion for summary judgment, for the first time, LaFave alleges that the county had a policy which deprived him of his rights. He maintains that his continued complaints of pain were ignored and although he was prescribed medication, it simply did not relieve his severe pain.

This court finds that the defendant was not deliberately indifferent to his serious dental and medical needs. Moreover, even if this court construed his complaint to state a viable claim against the county, LaFave has failed to show that the county provided inadequate medical and dental treatment. As previously stated, an inmate does not have the right to the treatment of his choice. The record shows that he was seen numerous times, and referred to a dentist on two occasions over a six month period. While LaFave argues that the dental appointments were untimely, the record shows that the initial delay occurred because he claimed that his mother was going to make the appointment but later changed her mind. In addition, the record demonstrates that he did not adhere to the prescribed medication regime. On various occasions, LaFave failed to get out of bed to obtain his medication in order to prevent infection in his mouth. Although it is apparent that LaFave disagreed with the treatment provided by Clinton, the record does not show that the defendant was deliberately indifferent to his serious medical needs. Accordingly, this court recommends that the defendant's motion for summary judgment should be granted.

*6 WHEREFORE, for the foregoing reasons, it is hereby

RECOMMENDED, that the defendant's motion for summary judgment (Dkt. No. 5) be GRANTED in favor of the defendant in all respects; and it is further

ORDERED, that the Clerk of the Court serve a copy of this Report-Recommendation upon the parties by regular mail.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court within TEN days. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

N.D.N.Y.,2002.
Lafave v. Clinton County
Not Reported in F.Supp.2d, 2002 WL 31309244 (N.D.N.Y.)

END OF DOCUMENT

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.